OTTO NEITGE v. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY.[1]

January 3, 1908.

Nos. 15,250—(56).

**Inspection of Railroad Switch.**

An employee of a railway company whose duties require him to hang a signal light upon a switch standard for the purpose of indicating that the switch is set in a particular manner is charged with the duty of using reasonable care to observe the condition of the switch, and his failure to observe and report a defective condition, which would have been observed by the exercise of reasonable care, constitutes negligence, for which the railway company is responsible.

**Defect—Evidence.**

The evidence considered, and *held* sufficient to justify the jury in finding that the switch was in a defective condition, and that the employee of the company, whose duties required him to exercise reasonable care to observe such condition, and report the same to the company, had failed to do his duty in this respect.

Action in the district court for Ramsey county brought by the administrator of the estate of Charles Neitge, deceased, to recover $5,000, for the death of plaintiff's intestate. The case was tried before Olin B. Lewis, J., and a jury which found a verdict in favor of plaintiff for $2,332. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*James B. Sheean* and *Thomas Wilson,* for appellant.

*McElwee & Hollihan* and *Morton Barrows,* for respondent.

[1] Reported in 114 N. W. 467.

ELLIOTT, J.

In an action by an administrator to recover damages occasioned by the death of Charles Neitge the jury returned a verdict in favor of the plaintiff, and the defendant appealed from an order denying its motion for a judgment notwithstanding the verdict or for a new trial. It was claimed that the train on which Neitge was acting as fireman was thrown from the track by a defective switch, which had been negligently allowed to remain obstructed. The appellant contends that the motion for judgment notwithstanding the verdict should have been granted because the evidence was insufficient to show that the accident was caused by an obstructed switch, and that, even if the switch was obstructed, the fact was not known to the defendant in time to have prevented the accident. A new trial at least is claimed, on the ground that the verdict is not sustained by the evidence, and that certain erroneous instructions were given by the court to the jury.

1. The engine and certain cars of a passenger train on which the deceased was acting as fireman were thrown from the track. After the accident three links of a chain were found wedged between the rails constituting the switch over which the train had just passed, and holding the switch point open about one-half of an inch. Nearby there was found a piece of chain about two feet long, and it was evident that the parts of the chain had been separated by the flanges of the engine wheels. On the afternoon of the day of the accident a freight train passed over the switch in question, and two men who were playing ball near the switch observed a chain dragging from one of the gondola cars. Between the hours of 3:34 p. m., when this freight train passed, and 6 p. m. of that day, a young man named Borrows, in the employ of the railway company, in the course of his usual employment placed a light upon the standard near the switch where the derailment occurred. In doing this he walked over the switch point, and testified that, if there had then been any obstruction there, he could not have avoided seeing it. This employee was seventeen years of age, and worked six hours each day in attending to the lights which were located at various distances north and south of the depot. During the week days he also worked a part of each

day as a sectionman. During the daytime the signals were given by means of targets attached to the switch stand, which indicated the track for which the switch was thrown. These targets were not visible at night, and after dark lanterns were therefore hung on the switch stands, which' exposed red lights for one track and green lights for the other. The defendant's roadmaster testified that: "The lights become signals to the engineer when it becomes dark, and he cannot observe the day signals. The switch stand is so constructed that a light cannot be placed thereon so as to show a false signal." It will be noted that the lantern when in position on the stand was itself a signal to the trainmen that the switch was in a certain condition indicated to them by the color of the light exposed.

It is conceded that this young man was not charged with the duty of inspecting switches in the sense of making an examination of the parts of the switch and testing the condition of the switch by operating its mechanism. This was done by other parties. But according to the testimony of the defendant's witness, while it was not the duty of the lamp man to inspect switches when placing out lamps, it was his duty under the company's rules to report any defects in the track which he observed while in the performance of his specific duties.

2. The evidence was ample to sustain the conclusion of the jury that the obstruction to the switch was caused by the chain which had been dragging from the freight car, and that the derailment of the passenger train and the death of the fireman resulted therefrom. It cannot in any sense be regarded as a guess or mere conjecture. It was a fair and reasonable inference which the jury might well draw from the conceded facts. The evidence furnished a reasonable basis for the conclusion of the jury and that is all that is necessary. Olson v. Great Northern Ry. Co., 68 Minn. 155, 159, 71 N. W. 5; Isherwood v. H. L. Jenkins Lumber Co., 84 Minn. 423, 87 N. W. 931.

3. The appellant's principal contention is that Borrows had no duty to perform in the matter of inspecting the switch, and that his occupation was such that, even if he had notice of the defect,

it was not notice to the company. Without reference to the question of notice, we hold that the nature of his employment was such as to impose upon him the duty of using ordinary care to observe the condition of the switch when he was placing upon the switch standard the light which constituted a signal to the approaching train that the switch was set so as to enable the train to pass safely upon the track designated by the light. If Borrows had used reasonable care to inspect the switch points which were under his feet, he would have discovered that the points had been drawn apart by the chain, and that the track was in a dangerous condition. If the obstruction was there, Borrows, according to his own testimony, must have observed it, and his failure to report it constituted negligence, which renders the railway company liable for the results. The jury found that the switch was obstructed, and evidently did not believe Borrows' statement. The court instructed the jury that it "was the duty of John Borrows in placing the light on the switch at the Y to exercise ordinary care to observe such obstructions to the switch as were open, patent, and obvious to a person of ordinary prudence under the circumstances, and, if the obstruction was of such a character that such a person in the exercise of such a degree of care would not have seen it, then there was no negligence on the part of the defendant." There was no error in this instruction.

We have carefully considered all the assignments of error, and have reached the conclusion that the order of the trial court should be affirmed. It is therefore so ordered.